John T. PHILLIPS, Jr., Corrado Frank Tumminello, Charles Phillip Freitag, and Carroll Charles Myers, Plaintiffs-Appellees,

v.

CROWN CENTRAL PETROLEUM CORPORATION, Defendant-Appellant.

No. 76–1554.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1977.

Decided April 6, 1977.

Herbert A. Bergson, James H. Kelley, Robert A. Burka, Bergson, Borkland, Margolis & Adler, Washington, D.C., and Morton A. Sacks, Cable, McDaniel, Bowie & Bond, Baltimore, Md., for defendant-appellant.

Robert G. Levy, Peter H. Gunst, Allan P. Hillman, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for all plaintiffs-appellees.

J. Hardin Marion, William C. Sammons, Tydings & Rosenberg, Baltimore, Md., for plaintiff-appellee Tumminello.

Before RUSSELL, Circuit Judge, WIDENER, Circuit Judge, and WYZANSKI, Senior District Judge.[*]

WYZANSKI, Senior District Judge.

Defendant appeals, pursuant to 28 U.S.C. §§ 1291 and 1292(a), from the District Court's permanent injunction, under § 16 of the Clayton Act, 15 U.S.C. § 26, directing defendant Crown Central Petroleum Corporation (Crown), which is a wholesaler of gasoline and an operator of retail gasoline service stations, to execute new three-year lease-and-dealer agreements with each of the four plaintiffs, John T. Phillips, Jr., Corrado Frank Tumminello, Charles Phillip Freitag, and Carroll Charles Myers, each being a Baltimore retail gasoline dealer. They complained, *inter alia*, and the District Court found, that defendant Crown had violated § 1 of the Sherman Act, 15 U.S.C. § 1, by agreeing with its competitors to fix retail gasoline prices.

While many issues are presented on this appeal, only a brief recital of the facts is necessary because, in our view, at this stage of the case, one issue is dispositive and requires a remand of the case to the District Court.

■ The presently significant issue is whether, it having been shown, for the first time, *after* the District Court had made its findings, had reached its conclusions, and had entered its permanent injunction, that, according to his own admission, one of the plaintiffs, Tumminello, had committed perjury, both in pre-trial depositions and at the trial, with respect to issues central to the litigation, and defendant, on that showing, having moved under Federal Civil Procedure Rules 52(b) and 60(b) that the District Court dismiss all claims of all plaintiffs or, in the alternative, grant a new trial or afford other relief pursuant to F.R.C.P. 59 (b) and 60(b), the District Court committed reversible error when the Court, without inquiring into the extent of the perjury, held that it would "continue to credit . . . Tumminello's testimony", and it, therefore, denied defendant Crown's motion in all respects except to strike one finding, and also refused to dissolve or stay the injunction.

■ We are mindful of our duty as an appellate court to accord wide latitude to findings of the trial court with respect to credibility of witnesses, and to facts and to inferences therefrom. *Zenith Radio Corp. v. Hazeltine*, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969), *McCrary v. Runyon*, 515 F.2d 1082, 1086 (4th Cir., 1975) Only when a finding of fact is "clearly erroneous" are we to set it aside. F.R.C.P. 52(a) *U. S. v. U. S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

Moreover, we are concerned to avoid in our statement of the facts, as they appear at this juncture, anything which might appear to govern findings of fact which the

---

[*] Sitting by designation.

District Judge may be called upon to make at later stages of this case.

In the light of those cautions, we now briefly summarize the dominant facts as disclosed in the present record.

Defendant Crown is an independent gasoline marketer. About 1965, having decided to convert, experimentally, to "multi-pump" marketing, it sold gasoline and motor oil at discount prices in its own attractive retail outlets. In 1969 and 1970 each of plaintiffs separately became a Crown dealer, that is, a lessee of a Crown gasoline station.

In 1972 plaintiff Phillips, and in 1973 plaintiff Tumminello, separately sought renewals of the *one-year* leases each had previously had from Crown as lessor of a gas station. Crown gave each only a *six-month* probationary lease.

In April 1973 each filed in the District Court a complaint charging defendant Crown with (1) agreeing with competing petroleum marketers to fix wholesale and retail gasoline prices ("horizontal price fixing"), (2) setting plaintiff's retail gasoline and oil prices ("vertical price fixing"), (3) unlawfully requiring plaintiff to purchase Crown motor oils exclusively, and (4) unlawfully restricting plaintiff's sales of other products, such as "antifreeze." A month later plaintiff Freitag and plaintiff Myers filed in the same court parallel complaints against Crown.

The District Judge consolidated the cases for trial, and heard them without a jury. He found that Crown had violated § 1 of the Sherman Act by (1) agreeing with other independent marketers, but not major company competitors, to fix the retail, but not the wholesale, price of gasoline, (2) illegally setting plaintiffs' retail prices, and (3) requiring plaintiffs to buy their motor oil from Crown. The judge further ruled that Crown had injured each plaintiff and that each was entitled to an injunction at once and to damages to be determined subsequently.

December 15, 1975 the District Court ordered Crown to enter into a new three-year lease with each plaintiff, and enjoined Crown from refusing, for any retaliatory reason, to renew the lease at the end of the first three-year term.

During subsequent taking of depositions relevant to damages, on December 11, 1975, plaintiff Tumminello was being examined concerning inconsistencies in records relating to vertical price pressure which allegedly occurred on April 24, 1971 and which were the sole basis for the District Court's finding of Fact No. 46 which read as follows:

46. In April 1971, plaintiff Tumminello decided to independently lower his retail gasoline prices, without a corresponding reduction in Crown's wholesale price, in order to better compete with a nearby competing Esso service station. This Esso service station had been posting retail gasoline prices lower than those posted by Tumminello. Shortly after Tumminello altered his prices, a Crown sales representative visited his station and told him that he could not lower his prices without Crown's approval. After such sales representative left his station, Tumminello received a telephone call from District Manager Conway who instructed him to raise his retail gasoline prices to their previous level immediately or his lease would be cancelled on five days' notice. For fear of losing his station, Tumminello increased his prices to their prior level at 3:00 P. M. that day. The competing Esso service station continued to post retail gasoline prices lower than those posted by Tumminello until at least September 1971, causing a substantial loss of gasoline sales at his station.

Seven days later, December 18, 1975 plaintiffs' own counsel (as is stated at p. 44 of their brief in this Court) "advised the [District] Court that Tumminello had testified falsely at the trial as to this incident, and, in that connection, had fabricated a service station shift sheet in support of that testimony. Crown thereupon filed post-trial motions seeking relief pursuant to Rules 52(b), 59(a) and 60(b) of the Federal Rules

of Civil Procedure, asking the Court, among other things, to dismiss the claims of all plaintiffs. On January 12, 1976 Tumminello's personal counsel, J. Hardin Marion, wrote the Court and stated that Tumminello was 'prepared, and anxious, to appear before the Court and to answer fully any and all questions from the Court and counsel relative to his testimony in this case, including the incident which gave rise to Finding of Fact No. 46.' "

The record makes it indisputable that defendant sought that it have an opportunity for a hearing in which Tumminello would be examined *ore tenus*, that Crown be permitted to offer additional testimony which had become relevant in view of the perjury of Tumminello, and that, thereafter, the District Judge should re-appraise the case and then determine the appropriate findings and conclusions.

Instead, the District Judge, after considering memoranda and oral argument addressed to him, by an oral opinion struck finding 46 but refused to grant the requested hearing or to prepare new findings. His reason was that "the false testimony and the false exhibit of plaintiff Tumminello were no more than cumulative and were not necessary to the Court's ultimate decision on the various issues." Indeed the judge added that "this Court will continue to credit . . . Tumminello's testimony as well as other exhibits offered by him."

It is quite possible that when all is told it will appear that the District Judge has correctly estimated the situation.

■ But that is not a sufficient reason for not conducting a plenary hearing. The District Judge and we know that on a vital matter Tumminello, according to his own and the other plaintiffs' counsel, has committed perjury. Just how pervasive was that perjury, neither the judges nor the parties other than Tumminello can know. It is possible that large parts of the intricate web of findings may be affected. It is possible that the perjury was limited, and that there remains a solid structure for the

injunction. One must hear before one decides. *Audi alteram partem* is a fundamental rule of procedural fairness.

Hence we conclude that the District Court should have granted defendant's motion to vacate or stay the injunction and to conduct a hearing as prayed.

In insisting on that rule, we are, of course, conscious that the record reveals that District Judge Harvey conducted with skill and patience a complicated case, that he was thorough, careful, and helpful to an appellate court in his initial findings of fact and conclusions of law, that already he has a substantial basis, apart from Tumminello's testimony, to support his injunction, that he may feel that even if Tumminello is a proven perjurer other plaintiffs will not be affected by such proof, and that there is no basis for here invoking the always treacherous maxim *falsus in uno, falsus in omnibus.*

Nonetheless, we cannot be sure that the confidence that the District Judge has in what would be shown by a full hearing and examination thereafter of the findings, conclusions, and injunction will be vindicated. We have, as we are sure the District Judge will have, an open mind to receive whatever may be shown in the light of what is now admitted to have been perjury on a most important aspect of the case.

*The injunction is vacated without prejudice, and the case is returned to the District Court for further proceedings in accordance with this opinion.*