Robert A. BAKER et al.,
Plaintiffs/Appellees,

v.

Andrew A. LIMBER et al., Defendants,

and

Robert H. Fendler,
Defendant/Claimant/Appellant.

Robert A. BAKER et al.,
Plaintiffs/Appellees,

v.

Andrew A. LIMBER et al., Defendants,

and

Robert H. Fendler,
Defendant/Counter-Claimant/Appellant.

Robert A. BAKER et al., Plaintiffs/Counter-Defendants/Appellees,

v.

Andrew A. LIMBER et al., Defendants,

and

Robert H. Fendler,
Defendant/Counter-Claimant/Appellant.

Nos. 79–3197, 79–3270 and 78–3503.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 10, 1981.

Decided June 8, 1981.

L. Reid Southern (argued), Southern & Mulhall, Phoenix, Ariz., Robert H. Fendler, Phoenix, Ariz., on brief, for defendant/claimant/appellant.

John R. McDonough (argued), Beverly Hills, Cal., Michael J. Maloney, Ball, Hunt, Hart, Brown & Baerwitz, Los Angeles, Cal., on brief, for plaintiffs/appellees.

Before KILKENNY and SNEED, Circuit Judges, and HANSON *, District Judge.

SNEED, Circuit Judge:

Robert H. Fendler brings three consolidated appeals from two orders of the district court imposing sanctions for his refusal to obey discovery orders. Appellant maintains that his refusals were protected by invocation of the Fifth Amendment privilege against self-incrimination. We hold that appellant failed to support his assertion of the privilege and that the district court did not abuse its discretion in imposing sanctions.

## I.

### FACTUAL BACKGROUND

Appellees in each of these appeals are independent trustees for a group of related companies originally organized, owned, or managed by appellant and other individuals. The trustees were appointed pursuant to a final judgment of permanent injunction entered in a securities fraud suit brought against the companies and their managers by the Securities Exchange Commission.[1] Under the terms of the judgment, the trustees were authorized to bring suit for the recovery of assets loaned, wasted, or misappropriated by the former officers and directors of the trusteeship companies. The action from which these appeals arose was initiated by the trustees to recover funds allegedly diverted by appellant from the Ancillary Acceptance Corp., one of the trusteeship companies, to the Limber Company, a codefendant of appellant below. The trustees alleged that appellant had authorized a sham loan from Ancillary to Limber in return for an unsecured promissory note, which was later forgiven. Appellant filed an answer and permissive counterclaims. He also filed a third-party complaint against the trustees and other individuals alleging, among other things, defamation, civil rights violations, and breaches of fiduciary duty. This complaint was dismissed with prejudice on May 26, 1978.[2]

On May 30, 1978, the trustees filed both a notice of their intent to depose appellant

---

* Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. SEC v. Lincoln Thrift Association, No. CIV 75-996-PHX WEC (D.Ariz. May 7, 1976).

2. Although the court stated in its order of dismissal that there was no just cause for delay, it failed to direct the clerk to enter judgment until December 11, 1978, approximately one month after appellant filed his first notice of appeal from the district court's order imposing sanc-

and a request for document production. At the deposition, which took place on June 7, 1978, appellant refused to answer questions or produce documents, asserting various constitutionally based privileges. He also challenged the authority of counsel for the trustees to conduct the deposition. The trustees then moved for an order compelling discovery. Appellant filed a motion in opposition, but failed to appear at the subsequent hearing, which was held on July 24, 1978. The district court found that appellant had failed to demonstrate the privileged nature of the requested discovery and that, in any event, appellant had waived his Fifth Amendment privilege by filing an answer, counterclaims, and papers in opposition to an earlier motion for summary judgment. The court therefore ordered appellant to comply with discovery.

A second deposition was taken on August 18, 1978. Appellant again refused to answer questions or produce documents, although he acknowledged the existence of the court's order. He also served handwritten notice of his intent to depose one of the trustees for the purpose of showing that the trustees were cooperating with the U.S. Attorney, who was conducting a grand jury investigation of appellant at the time. The trustees then filed a motion for sanctions. The district court issued an order staying all discovery sought by appellant pending resolution of the trustees' motion. On November 2, 1978, the court issued an order imposing sanctions. The order (1) dismissed appellant's counterclaims with prejudice; (2) struck appellant's answer and affirmative defenses without leave to amend; and (3) entered a default. The case was referred to a U.S. magistrate to determine damages, pursuant to Fed.R.Civ.P. 55(b)(2). On November 7, 1978, appellant filed his first notice of appeal.

Following the magistrate's determination of damages, the court entered judgment against the appellant and awarded compensatory and punitive damages in accordance with the magistrate's findings. Appellant filed a notice of appeal from this judgment on April 13, 1979. Thereafter, the trustees applied for discovery in aid of judgment and execution pursuant to Fed.R.Civ.P. 69(a). On May 7, 1979, the court entered an order compelling discovery from appellant as a judgment-debtor. An examination was held on May 11 for the purpose of identifying assets from which the judgment might be satisfied. After answering preliminary questions, appellant then refused to answer any questions relating to the amount or location of his assets, asserting that he was acting on the advice of counsel. The parties then adjourned to the district court, where appellant identified the Fifth Amendment as the source of his privilege. From the bench, the court ordered appellant to answer questions regarding the amount and location of proceeds realized from the sale of stock in one of appellant's corporations, which had been authorized by the court in connection with other proceedings. Counsel for appellant indicated that his client still would refuse to answer and invited the court to "shorten the proceedings" by holding appellant in contempt. The court did so, but permitted ten days in which to file an appeal. The court also enjoined appellant from disposing of the proceedings of the stock sale pending resolution of the appeal. Appellant then filed his third notice of appeal.

## II.

### NOS. 78–3503 AND 79–3197—JURISDICTION

 In their briefs and at oral argument the trustees maintained that this

---

tions for noncompliance with discovery. On January 8, 1979, appellant filed an "amended" notice of appeal from the court's dismissal of the third-party complaint. However, appellant did not argue the question until the filing of his reply brief in the appeal of the court's sanctions order. Matters raised for the first time in an appellant's reply brief normally may not be considered on appeal. *Levy v. Urbach*, 651

F.2d 1278 at 1280 n.3 (9th Cir. 1981). In any event, the dismissal was entirely proper. Appellant's third-party complaint (1) named persons as defendants who were parties to the main action (the trustees); and (2) asserted claims entirely independent of those asserted in the main action against appellant. For either reason, the complaint failed to comply with Fed.R.Civ.P. 14(a).

court was without jurisdiction to hear the November 7, 1978, appeal (No. 78–3503) from the district court's order imposing discovery sanctions.[3] They argue, for two reasons, that the order was not "final" for purposes of 28 U.S.C. § 1291. First, at the time appellant filed his first notice of appeal, the district court had ordered a default but had not yet entered judgment. The determination of damages was still pending. The trustees are correct in this argument and appellant's first appeal is dismissed as premature. However, appellant's April 13, 1979, appeal (No. 79–3197), which followed the district court's entry of judgment following the determination of damages, is from an order final as to the appellant.

■ A serious question exists concerning the finality of the district court's judgment, however. The trustees' suit from which these appeals arose was an action against several parties. The court's entry of a default judgment against the appellant adjudicated only those claims pending against him. Rule 54(b) of the Federal Rules provides that an order adjudicating the rights and liabilities of fewer than all the parties is not final unless the district court makes (1) "an express determination that there is no just reason for delay," and (2) "an express direction for the entry of judgment." The district court's judgment contains neither certification required by Rule 54(b). Accordingly, at the time this appeal was taken, the judgment was not final for purposes of 28 U.S.C. § 1291. *See Chacon v. Babcock*, 640 F.2d 221, 222 (9th Cir. 1981); *Lockwood v. Wolf Corp.*, 629 F.2d 603, 608 (9th Cir. 1980); *Curlott v. Campbell*, 598 F.2d 1175, 1179–80 (9th Cir. 1979).

■ That portion of the case remaining before the district court, however, subsequently has been reduced to final judgment. On September 30, 1980, the trustees obtained a final judgment against the remaining defendants. Both parties agree that no claims now remain to be adjudicated in the action from which the April 13 appeal

arose. We recently held that judgments whose finality normally would depend upon a Rule 54(b) certificate may be treated as final if remaining claims subsequently have abeen finalized, even by developments occurring after appeal. *Anderson v. Allstate Insurance Co.*, 630 F.2d 677, 680–81 (9th Cir. 1980). Therefore, we hold that we have jurisdiction under 28 U.S.C. § 1291 to hear the April 13 appeal. We now turn to the merits.

### III.

### NO. 79–3197—THE MERITS

■ The Federal Rules provide that any party to a civil action is entitled to all information relevant to the subject matter of the action unless the information is privileged. Fed.R.Civ.P. 26(b)(1). The privilege against self-incrimination may be invoked in civil as well as criminal proceedings. *Kastigar v. United States*, 406 U.S. 441, 445, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972), *Campbell v. Gerrans*, 592 F.2d 1054, 1057 (9th Cir. 1979). Thus, by operation of both the Federal Rules and the Constitution, a party is shielded from compulsory discovery in a civil action if a risk of self-incrimination is involved. Whether the district court erred in imposing discovery sanctions depends largely on whether the appellant justified his assertion of the Fifth Amendment privilege.

■ "[T]he privilege normally is not asserted properly by merely declaring that an answer will incriminate." *Brunswick Corp. v. Doff*, 638 F.2d 108, 110 (9th Cir. 1981).

> It is not necessary, of course, that the person to whom the question has been put establish the precise manner in which he will incriminate himself by responding. This would make the privilege useless. As the Supreme Court said in *Hoffman v. United States*, 341 U.S. 479, 486–87 [71 S.Ct. 814, 818, 95 L.Ed. 1118], . . . :

---

**3.** In response to our request for additional briefing on the jurisdictional issues, the trus-

tees have changed their position and now maintain that jurisdiction is proper.

"To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result."

*Id.* The trial court must make this determination from the facts as well as from "his personal perception of the peculiarities of the case." *Hoffman v. United States, supra,* 341 U.S. at 487, 71 S.Ct. at 818. If he decides that no threat of self-incrimination is evident, the defendant then bears the burden of showing the danger of incrimination. *United States v. Neff,* 615 F.2d 1235, 1240 (9th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980).

▮ We hold that the district court did not err in finding that appellant failed to support his assertion of the privilege.[4] In the first deposition, conducted on June 7, 1978, appellant stated his name for the record, but refused to answer any further questions, including those directed to his address, telephone number and educational and professional background. A danger of incrimination is not evident from the implications of the questions, nor did appellant provide any basis for believing that a responsive answer or an explanation for his refusal would raise such a danger. In his opposition to the trustees' motion to compel discovery, appellant did explain that he had been convicted in state court with motions and appeals still pending. However, appellant failed to describe the subject matter of the state indictment or demonstrate the nexus between it and the requested discovery.

▮ Appellant also informed the court that he was the subject of a federal grand jury investigation concerning the operation of a group of "thrift" companies in which appellant owned a controlling interest. Appellant repeated this allegation at the second deposition, held on August 18, 1978. There was no attempt, however, to explain the connection between these investigations and the Ancillary-Limber loan, which was the subject of the deposition. In view of the information available to the court, that connection was not evident. In a case quite similar to this one, *Martin-Trigona v. Gouletas,* 634 F.2d 354 (7th Cir. 1980) (per curiam), the Seventh Circuit recently held that "the pendency of criminal proceedings does not by itself excuse a witness of his obligation to give testimony in civil proceedings. Some nexus between the risk of criminal conviction and the information requested must exist." *Id.* at 360. Appellant did not demonstrate that nexus to the district court.[5]

▮ Because we hold that appellant failed to support his assertion of the privilege, our only remaining inquiry is whether the district court abused its discretion in

---

4. Because we so hold, we need not determine whether the court erred in finding that appellant waived his right to assert the privilege by filing an answer, counterclaims, and papers in opposition to a motion for summary judgment. We note, however, that the question of waiver must be addressed in the context of specific questions to which the witness asserts a privileged silence. "Whatever the standard of waiver for defendants who voluntarily testify, 'an ordinary witness may "pick the point beyond which he will not go," and refuse to answer questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to *further* incriminate him.'" *United States v. Seifert,* 648 F.2d 557 at 561 (9th Cir. 1980) (quoting *In re Master Key Litigation,* 507 F.2d 292, 294 (9th Cir. 1974)) (emphasis in original). Without this particularized examination, it is not possible to say that the mere filing of responsive pleadings and papers constitutes a generalized waiver of the privilege.

5. Appellant also failed to establish a basis for privileged refusal to produce documents. The Fifth Amendment does not protect against production of corporate records held in a representative capacity, nor does it protect against production of personal papers and effects unless the act of producing them would itself serve as the basis for incriminating inferences. *See In re Grand Jury Proceedings,* 633 F.2d 754, 756 (9th Cir. 1980). Most of the documents sought by the trustees were corporate records and minutes. As to other documents sought, appellant failed even to allege that the act of production would create a risk of incrimination, and no such risk was evident.

imposing sanctions pursuant to Fed.R.Civ.P. 37(b).[6] *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981); *United States v. Sumitomo Marine & Fire Insurance Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). The district court's decision will not be disturbed unless we have " 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " *United States v. Sumitomo Marine, supra*, 617 F.2d at 1369 (quoting *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976)). By entering a default judgment against appellant, the court imposed the harshest of the Rule 37(b) sanctions. As a matter of due process, such sanctions are not to be imposed unless noncompliance with discovery procedures is due to willfulness or bad faith. *National Hockey League, supra*, 427 U.S. at 640, 96 S.Ct. at 2779. Nevertheless, we have often upheld dismissal of a complaint or entry of default as sanctions within the lower court's discretion. *E. g., Sigliano v. Mendoza, supra* (dismissal); *G–K Properties v. Redevelopment Agency*, 577 F.2d 645 (9th Cir. 1978) (dismissal); *Anderson v. Air West, Inc.*, 542 F.2d 1090 (9th Cir. 1976) (entry of default; striking affirmative defenses); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838 (9th Cir. 1976) (evidence preclusion leading to dismissal); *Lyons v. Johnson, 415 F.2d 540 (9th Cir. 1969), cert. denied, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970) (dismissal in context of Fifth Amendment assertion).* See Transamerica Corp. v. Transamerica Bancgrowth *Corp., 627 F.2d 963 (9th Cir. 1980) (entry of default authorized by local rules).*

▪ We hold that the district court did not abuse its discretion in striking appellant's counterclaim and entering a default judgment against him. On two occasions appellant refused to answer any questions

concerning the subject matter of the lawsuit against him or the counterclaims he raised against the trustees. No more serious refusal to comply with discovery is conceivable, and the imposition of harsh sanctions is well within the court's discretion. Appellant's silence was predicated on a gravely defective assertion of a constitutional privilege. The mere assertion is not sufficient to excuse noncompliance with the district court's order.

▪ Appellant has raised three other objections to the sanctions. None is meritorious. First, appellant contends that the June 17 deposition was void because the attorney conducting the deposition was not authorized by local rules to practice before the district court. However, an examination of the final judgment in the SEC injunctive action reveals that the attorney in question was appointed by the court as special counsel for the trustees with authority to prosecute legal actions before the court.

▪ Appellant's second argument seems to be that the scope of the August 18 deposition exceeded that of the June 7 deposition, which formed the basis for the court's order compelling discovery. Our examination of the record persuades us that any variances between the two depositions were immaterial and that appellant's conduct at the August 18 deposition clearly violated the court's order.

▪ Finally, appellant complains that he was prevented from establishing the validity of his claim of privilege because the district court prevented him from deposing one of the trustees for the purpose of showing cooperation between the trustees and the U.S. Attorney. Appellant first indicated his intention to depose the trustee at the conclusion of the second deposition on August 18. This discovery, and all other discovery by appellant, was stayed by the court pending resolution of the trustees'

---

**6.** Even if appellant had adequately supported his assertion of the privilege, the court would have been justified in taking other action necessary to prevent unfairness to the opposing parties. *See Wehling v. Columbia Broadcast-* *ing System*, 608 F.2d 1084, 1087–89 (5th Cir. 1979), *rehearing denied*, 611 F.2d 1026 (5th Cir. 1980); *Lyons v. Johnson*, 415 F.2d 540 (9th Cir. 1969), *cert. denied*, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970).

motion for sanctions following the August 18 deposition. A court should take all reasonable steps to accommodate a witness' efforts to justify assertion of the Fifth Amendment privilege. In this case, however, appellant did not request discovery until after two depositions had been taken. In addition, appellant did not even appear at the hearing held by the court following the first deposition. The tardiness of appellant's request for discovery undermines any claim of good faith. Appellant was afforded adequate opportunity to justify his claim. The district court did not abuse its discretion in protecting the trustees from harassment and further delay.

## IV.

### NO. 79–3270—RULE 69 DISCOVERY CONTEMPT CITATION

The district court found appellant in contempt for failing to comply with Rule 69 discovery by the trustees. The court granted appellant leave to appeal but enjoined him from disposing of certain assets until the appeal was concluded. Initially, we must consider whether this appeal raises only the propriety of the district court's injunction, or the validity of the underlying contempt citation as well. The trustees have argued that only the injunction is before this court. We reject this argument.

■ The filing of the notice of appeal invokes the jurisdiction of an appellate court, and it is the notice of appeal that normally establishes the issues to be addressed. *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1253–54 (3d Cir. 1977). Those issues may include questions "fairly to be inferred from the notice as intended to be presented for review on appeal." *Id.* at 1254. We have examined appellant's notice of appeal and find that it provides fair notice that the underlying contempt citation would be challenged. Indeed, the injunction was issued only to maintain the status quo pending an appeal of the contempt citation. The parties envisioned such an appeal and it is squarely addressed in the briefs.

A judgment-debtor's refusal to answer questions in a Rule 69 proceeding normally would justify a court's exercise of its contempt power. The issue, once again, is whether appellant's silence was protected by his invocation of the privilege against self-incrimination. We have previously discussed the standards for determining whether assertion of the privilege was justified. Appellant has again failed to satisfy those standards.

Following entry of judgment, the trustees applied for and received a court order compelling discovery from appellant as a judgment-debtor. A Rule 69 examination was held on May 11, 1979, for the purpose of identifying assets from which the judgment might be satisfied. Asserting that he was acting on the advice of counsel, appellant refused to answer questions concerning the amount or location of his assets. One line of questioning concerned proceeds from appellant's sale of stock in the American Bank of Commerce (ABC). This sale had been authorized by the district court in partial settlement of a separate proceeding brought by the trustees to recover funds diverted from trusteeship companies for the purpose of capitalizing ABC. Prior to the court's order sanctioning the stock sale, the share certificates had been ordered into the custody of the court pending resolution of the suit.

■ Following appellant's refusal to answer questions concerning the amount or location of the stock sale proceeds, the parties adjourned to the district court. There appellant again refused to answer on Fifth Amendment grounds. The court directed appellant to answer, but limited its order to information concerning proceeds from the ABC sale. Compliance with this order would not have raised evident risks of self-incrimination, nor did appellant explain the nature of the risk or describe the reasons why explanation would be injurious. Once again, no attempt was made to demonstrate a nexus between the subject matter of the Rule 69 examination and any on-going or potential criminal proceedings. Even if appellant feared investigation of his acquisi-

tion of the ABC stock or his subsequent relationships with that company, the trustees' questions concerned only the amount and location of proceeds from a judicially sanctioned sale of stock. On this information, appellant's invocation of the privilege seems to have served only as a means of avoiding execution of judgment. *See Brunswick Corp. v. Doff, supra; Martin-Trigona v. Gouletas, supra; Capitol Products Corp. v. Hernon,* 457 F.2d 541 (8th Cir. 1972).

■ The only remaining issue is whether the district court abused its discretion by enjoining appellant from disposing of the ABC stock sale proceeds pending resolution of this appeal. Whether the injunction is viewed as a Rule 37(b) sanction, as a sanction for contempt, or merely as a means of preserving the status quo ancillary to the court's decision to suspend contempt sanctions pending appeal, we hold that no abuse of discretion occurred. The purpose of a Rule 69 proceeding is to identify assets from which judgment might be satisfied. The district court's action was an appropriate means of ensuring that this purpose was not frustrated pending disposition of the questions of privilege on appeal.

Affirmed.